[L. A. Nos. 666, 783.   Department Two.—October 5, 1900.]

STATE LOAN AND TRUST COMPANY, Respondent, v. W. G. COCHRAN et al., Appellants.

ACTION AGAINST SURETIES—STATUTE OF LIMITATIONS—WRITTEN REQUEST FOR DELAY—CONTRACT TO WAIVE STATUTE—ESTOPPEL.—Sureties sued upon a bond are estopped to plead the statute of limitations where, pending the running of the statute, they signed a written request for delay in proceedings against them, until they should request further proceedings, and agreed in writing to waive all advantage which might result from the delay requested, in consideration of which request and promise the plaintiffs forbore to sue for a period of years.

ID.—VALIDITY OF CONTRACT—CONSISTENCY WITH CODE—WRITTEN PROMISE. The written contract to waive the statute of limitations was not in contravention of section 360 of the Code of Civil Procedure, but was a written promise within the language of that section, which took the case out of the bar of the statute.

ID.—RUNNING OF LIMITATION SUSPENDED—EXTENSION OF TIME.—Apart from statute, it is recognized law that if, pending the running of the statute of limitations, the time of payment is ex-

tended by the creditor with the debtor's assent, the statute does not run during the time of the suspension.

ID.—FORBEARANCE OF CREDITOR AT DEBTOR'S REQUEST.—Where the creditor forbears to sue, upon the written request of the debtor, the debtor will be estopped to plead the statute, the running of which is suspended during the time of the forbearance as requested.

ID.—PUBLIC POLICY—AGREEMENT FOR LIMITED TIME—MAXIM.—An agreement to waive the statute of limitations for a limited time is not against public policy; but the general rule applicable thereto is embodied in the maxim, "*Pacta legem faciunt inter partes.*"

ID.—CONSIDERATION—ACCEPTANCE OF PROMISE—COMPLIANCE WITH REQUEST.—The mere acceptance of the naked written promise of the obligor to waive the statute would not make it a binding contract; but the compliance of the obligee with the obligor's written request for delay, upon the faith of the promise, constituted a sufficient consideration for the promise and made it effective to suspend the statute while the parties acted as agreed.

ID.—RECOMMENCEMENT OF STATUTE.—The statute of limitations does not commence to run again from the date of the written promise, but only from the time when the parties have ceased to act upon it as agreed.

ID.—SUBSTITUTION OF NEW SURETY—COSURETIES NOT RELEASED FROM AGREEMENT.—The substitution of a new surety, who is not bound by the agreement of the other sureties to waive the statute of limitations, does not have the effect to release the other sureties from their agreement, or to make the limitation run from its date, or to render their obligation any different from what it would have been if the substitution had not been made.

ID.—HARMLESS ERROR IN INSTRUCTION—MISCONSTRUCTION OF CONTRACT—PERIOD OF DELAY—SUSPENSION OF LIMITATION.—An erroneous instruction, based upon a misconstruction of the contract, thereby shortening the time of agreed delay and making the statute run only from the expiration of that time, without including the time of the original delay, is harmless, without reference to the question of a mere suspension of the period of limitation, where it appears that, under a true construction of the contract, the period of agreed delay for all purposes was such as to preclude any successful plea of the statute.

ID.—BOND OF BANK SECRETARY —COLLECTION OF COLLATERAL SECURITIES—CHANGES BY BANK—CONSENT OF ONE SURETY BINDING UPON COSURETIES.—Where the bank plaintiff, upon the bond of whose deceased secretary the defendants were sureties, during the period of delay requested by them, proceeded to realize upon the collateral securities of the deceased principal in its hands, the consent of one of the defendant sureties to changes in the disposition of the collateral securities held by the bank, includ-

ing extensions of time and renewals of notes, and compromises thereof, and payments in property, is binding upon all of the sureties, and none of them can claim any release from liability on the bond by reason of such proceedings.

ID.—POWER OF COSURETY—JOINT DEBTOR.—Though one joint debtor cannot, without the consent of his codebtors, make new contracts, or revive a debt barred by the statute of limitations, he has power to act for the others in reference to the contract by which the relation was created; and cosureties on the same bond have each power to act with reference to collateral securities given by the principal to the obligee of the bond.

ID.—INSTRUCTION AS TO POWER OF SURETY—CONDITION WITHOUT EVIDENCE—CHARGE OF COLLATERALS BY COMMITTEE OF SURETIES—HARMLESS ERROR.—An instruction correctly stating the power of one surety to bind the others by consent to the action of the bank in disposing of collaterals is not rendered prejudicially erroneous, because not given absolutely, but conditionally upon a finding by the jury that the bank appointed the sureties a committee to have charge of the collaterals, which finding there was no evidence to sustain.

ID.—NONSUIT—PROOF OF CAUSE OF ACTION—EXCESS IN VERDICT NOT PROVED—APPEAL—RELEASE OF EXCESS.—In an action against the sureties on the bond, proof that the secretary of the bank, the principal in the bond, loaned money of the bank to himself, the notes for which were renewed in another name, that unauthorized loans by him were not paid, that he misappropriated money of the bank received by him, and converted to his own use collaterals belonging to the bank, is sufficient to prevent a nonsuit, and to support a verdict against the sureties, except as to an excess not proved. Such excess must be released with interest, as a condition of affirming the judgment upon appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.   Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

H. T. Gage, Gibbon & Halsted, and McKinley & Graff, for Appellants.

The acknowledgment or new promise to pay the debt provided for in section 360 of the Code of Civil Procedure is the only evidence to avoid the bar of the statute of limitations. (*Fairbanks v. Dawson*, 9 Cal. 92, 93; *Barron v. Kennedy*, 17 Cal. 577; *Pena v. Vance*, 21 Cal. 142; *Heinlin v. Castro*, 22 Cal. 100;

*McCormick v. Brown,* 36 Cal. 185[1]; *Chabot v. Tucker,* 39 Cal. 437; *Biddel v. Brizzolara,* 56 Cal. 377; *Southern Pacific R. R. Co. v. Prosser,* 122 Cal. 415; *Curtis v. Sacramento,* 70 Cal. 416; *Tuggle v. Minor,* 76 Cal. 96.) An agreement beforehand to waive the statute of limitations is void, as contravening a law established for a public reason. (Civ. Code, sec. 3513; *Shain v. Sresovich,* 104 Cal. 406; *Bills v. Silver King Min. Co.,* 106 Cal. 22; *Harper v. Leal,* 10 How. Pr. 283; *Shapley v. Abbott,* 42 N. Y. 443[2]; *Crane v. French,* 38 Miss. 504.) The agreement was without consideration. (*Canal Co. v. Roach,* 78 Cal. 554.) The action is barred because brought more than four years from the date of the promise. (*McCormick v. Brown, supra; Joyner v. Massey,* 97 N. C. 148; *Crane v. French, supra.*) There is no equitable estoppel to plead the statute for want of the necessary elements of estoppel by conduct. (*McCormick v. Orient Ins. Co.,* 86 Cal. 260; *First Nat. Bank of Los Angeles v. Maxwell,* 123 Cal. 360[3]; *Barnhart v. Fulkerth,* 93 Cal. 499; *Lux v. Haggin,* 69 Cal. 266; *Murphy v. Clayton,* 113 Cal. 160; *McKeene v. Naughton,* 88 Cal. 467.) The act in declaration of one of the cosureties on this bond could not bind the others. (*Willoughby v. Irish,* 35 Minn. 67[4]; *Smith v. United States,* 2 Wall. 219; *Wolf v. Fink,* 1 Pa. St. 435[5]; *Wallis v. Randall,* 81 N. Y. 170; *City Nat. Bank v. Phelps,* 97 N. Y. 44[6]; *Crosby v. Wyatt,* 10 N. H. 318.)

Charles H. McFarland, for Respondent.

An agreed extension of credit suspends the statute of limitations. (*Frink v. Le Roy,* 49 Cal. 314.) A written agreement to waive the statute, or not to take advantage of delay, constitutes an estoppel to plead the statute of limitations. (*Jordan v. Jordan,* 85 Tenn. 561; 3. S. W. Rep. 896; *Utica Ins. Co. v. Bloodgood,* 4 Wend. 652; *Webber v. Williams College,* 23 Pick. 302; *Rowe v. Thompson,* 15 Abb. Pr. 377; *Burton v. Stevens,* 24 Vt. 131[7]; *Kellogg v. Dickinson,* 147 Mass. 432; *Quick v. Corlies,* 39 N. J. L. 11; *Warren v. Walker,* 23 Me. 453,

---

[1] 95 Am. Dec. 170.
[2] 1 Am. Rep. 548.
[3] 69 Am. St. Rep. 64.
[4] 59 Am. Rep. 297.
[5] 44 Am. Dec. 141.
[6] 49 Am. Rep. 513.
[7] 58 Am. Dec. 153.

457; *Hodgdon v. Chase,* 29 Me. 49; *Randon v. Toby,* 11 How. 493; Angell on Limitations, 113.)   An agreement to forbear suit is for a reasonable time if no other time is fixed.   (Wood on Limitations, 403-39; *Glasscock v. Glasscock,* 66 Mo. 627; *Williston v. Perkins,* 51 Cal. 554; *Vance v. Pena,* 41 Cal. 686; *Luckhart v. Ogden,* 30 Cal. 557; *Crocker v. Holmes,* 65 Me. 195[8]; *De Wolf v. French,* 51 Me. 420; *Nunez v. Dautel,* 19 Wall. 562; *Ubsdell v. Cunningham,* 22 Mo. 124; *Sears v. Wright,* 24 Me. 278.)  The act of one of the cosureties in consenting to the disposition of the collaterals of the deceased principal bound the other sureties.  The act or admission of a joint debtor is competent against all as to any fact which does not tend to create a new contract.   (Code Civ. Proc., sec. 1870, subd. 5; *Bank of United States v. Lyman,* 20 Vt. 671; *Bridge v. Gray,* 14 Pick. 61[9]; *Dickerson v. Turner,* 12 Ind. 230; *Barrick v. Austin,* 21 Barb. 242; *Martin v. Root,* 17 Mass. 222; *Dennie v. Williams,* 135 Mass. 28.)

THE COURT.—Appeals from a judgment on verdict in favor of plaintiff, for the sum of six thousand five hundred dollars and costs, and from an order denying a new trial.

The points relied upon for reversal are: The statute of limitations; errors of law occurring in the instructions, in denying motion for nonsuit, and in the admission of evidence; and irregularity in the proceedings of the court and jury.  The last point, however, will not require an extended consideration. There was nothing in the casual remark of the judge calculated to influence the jury in giving their verdict.  Our attention will therefore be confined to the other points.

The defendants (with another) were sued as sureties on the official bond of S. B. Hunt, as secretary of the plaintiff, for the term of a year from February 6, 1889.  Hunt was re-elected at the expiration of his term and continued in office until his death in December, 1890.  The breaches of the bond assigned consisted in the misappropriation of moneys of the plaintiff— of which the secretary was custodian—and are alleged to have occurred at various dates, some of them extending into his second term; but the bond was held by the court to apply to the

[8] 20 Am. Rep. 687.        [9] 25 Am. Dec. 358.

first term only, and a nonsuit granted as to causes of action subsequently accruing.

As to the statute of limitations: The suit was brought in the year 1897, more than seven years after the occurrence of the alleged breaches of the bond; but, pending the running of the statute, a written proposition was made to the board of directors by the defendants, which was accepted by a resolution of the board of the same date, and which reads as follows:

"Los Angeles, Cal., 1 July, 1892.
"To State Loan & Trust Company, a Corporation:

"We, the undersigned, hereby request that no further proceedings be hereafter taken for the collection of any of the obligations to the said corporation of the late Samuel B. Hunt, or his estate, or against the undersigned as sureties on the bond of said S. B. Hunt as an officer of this bank, until we request that such proceedings be taken. We agree to take no advantage of any such delays hereinafter incurred and to claim no release by virtue of any future delays occasioned by this request. We assume no new obligation or liabilities by signing this instrument except to waive any advantage to ourselves that might otherwise accrue to us by virtue of the delay that we hereby request in matter of said collection. This instrument is not to be construed and is not intended as an admission that any liability exists against any of the undersigned.

"JOHN BRYSON, Sr.
"W. G. COCHRAN.
"H. J. WOOLLACOTT."

On September 13th of the same year (1892) the defendant, Sarah B. Hunt, by written agreement of plaintiff, herself and the appellant defendants, was substituted in the bond in the place of John B. Hunt, deceased, one of the original sureties. But it was held by the court on demurrer that, as against her, the plaintiff's cause of action was barred, and judgment was rendered in her favor.

Pursuant to the agreement the bank forbore to sue while engaged in realizing upon the securities and other assets held by it on account of Hunt, and afterward, pending negotiation with the defendants for a settlement, until some time subse-

quent to March 10, 1896; at which date a letter was addressed
to the defendants by a committee of the bank informing them
that they had been appointed to take steps for the collection of
the bond, and requesting a meeting with a view to settlement.

It was, in effect, held by the court—on demurrer and in in-
structing the jury—that the effect of the written proposition
of the defendants and its acceptance by the plaintiff, and of
the subsequent conduct of the parties, was to take the case out
of the operation of the statute. Against this it is urged by
the appellant (1) that the agreement to waive the statute was
void as being in contravention of section 360 of the Code of
Civil Procedure, and also (2) as being against public policy;
(3) that there was no consideration for the agreement; and
(4) that, even could the agreement be regarded as valid, the ac-
tion was barred by the lapse of four years from its date, or, at
least, by the lapse of four years from the substitution of Mrs.
Hunt in the bond, which occurred September 12, 1892.

1. On the first point, it is assumed by the appellants that
the means of avoiding the bar of the statute prescribed by sec-
tion 360 of the Code of Civil Procedure are exclusive of all
others; and they conclude that to take the case out of the opera-
tion of the statute there must be either an acknowledgment of
the debt or an express promise to pay it. But neither the
premise assumed nor the conclusion drawn from it can be
admitted. With regard to the conclusion, the "promise" re-
ferred to is not necessarily a promise to pay the debt. A
promise not to plead the statute comes equally within the
language used; and (unless opposed to public policy—a point
presently to be discussed) will equally operate to prevent the
bar of the statute. Nor can the premise be admitted. The
statute refers only to two of the recognized means by which
the operation of the statute may be avoided—namely, acknowl-
edgments and promises—and requires these to be in writing;
there is nothing in it to imply an intent otherwise to alter the
law. But apart from the statute, it has always been recognized
law that if, pending the running of the statute, the time of
payment is extended by the creditor with the assent of the
debtor, the statute does not run during the time of the sus-
pension; nor is it necessary that the contract extending the

time for payment be signed by the debtor. (*Smith v. Lawrence,* 38 Cal. 24.[10]) And so in many cases—as, e. g., where a creditor at the request of the debtor forbears to sue—the debtor will be estopped to plead the statute. (1 Wood on Limitations, sec. 76; *Randon v. Toby,* 11 How. 493, 517; *Burton v. Stevens,* 24 Vt. 131[11]; *Utica Ins. Co. v. Bloodgood,* 4 Wend. 656; *Gaylord v. Van Loan,* 15 Wend. 312; *Joyner v. Massey,* 97 N. C. 148; *Daniel v. Board of Commrs.,* 74 N. C. 497; *Haymore v. Commissioners, etc.,* 85 N. C. 268; *Barcroft v. Roberts,* 91 N. C. 363; *Webber v. Williams College,* 23 Pick. 302; *Bridges v. Stephens,* 132 Mo. 538.)

In the case last cited the authorities are very fully discussed. In the North Carolina cases, and also in the Missouri case, the principle is applied to cases where the request and waiver were not in writing; and on this point they are in conflict with *Shapley v. Abbott,* 42 N. Y. 448.[12] But this question does not concern us, as here the reliance is on a written document.

2. With regard to the policy of the law, there may be a question as to the validity of an agreement to waive the statute, made as part of the original contract, or a subsequent agreement to waive the statute for all time; and on this point we have authorities both ways. (*Crane v. French,* 38 Miss. 531, 532; *Quick v. Corlies,* 39 N. J. L. 11.) But in the former case—which holds such a contract to be against public policy— the validity of such agreements for a definite or limited time is admitted; nor has any case to the contrary been brought to our attention except that of *Wright v. Gardner,* 98 Ky. 454, which does not commend itself to our consideration. The general rule is embodied in the maxim, *Pacta legem faciunt inter partes;* and no reason, on the score of policy or otherwise, can be suggested why an exception should be made in this case. In this state, at least, the validity of such agreements must be regarded as established. (*Wells, Fargo & Co. v. Enright,* 127 Cal. 669.)

3. On the point of consideration, it is claimed by the appellant that the written proposition of the defendants and its

[10] 99 Am. Dec. 344.        [12] 1 Am. Rep. 548.

[11] 58 Am. Dec. 153.

acceptance by the plaintiff did not constitute a valid contract binding on the latter; and this contention must, we think, be admitted.  For the agreement of the plaintiff (if any) would be never to sue until requested by the defendants; which could not have been the intention of the parties.  The mere acceptance of the proposition, therefore, did not constitute a consideration for the defendant's agreement to waive the statute. But it does not follow that a consideration did not subsequently arise.  There was a written request from the defendants that proceedings should not be taken until requested by them, accompanied by a written promise or proposition (in effect) to waive the statute if the plaintiff would forbear legal proceedings; and upon familiar principles of law the subsequent compliance of the plaintiff with the request constituted a sufficient consideration for the promise.  The case is, in principle, the same as the case put by Mr. Angell (Angell on Limitations, sec. 113, p. 99): "If A promises B to pay him a sum of money if he will do a particular act, and B does the act, the promise becomes binding, although B, at the time of the promise, does not engage to do the act. . . . . Until the performance of the condition of the promise there is no consideration, and the promise is *nudum pactum;* but, on the performance of the promisee, it is clothed with a valid consideration, relates back to the promise, and it then becomes obligatory." (*Train v. Gold,* 5 Pick. 384.)  So long, therefore, as the request and proposition of the defendants remained pending, the plaintiff was entitled to comply with it; and his compliance with it constituted a sufficient consideration for the defendants' agreement; and during the time the parties thus acted as agreed the running of the statute was suspended.  (*Smith v. Lawrence, supra.*)

4. The statute, therefore, did not commence to run from the written request and proposition of the defendants, but from the time only that the parties or one of them ceased to act upon it, which was some time subsequent to the letter of the plaintiff to the defendants of March 10, 1896.  Nor was the case affected by the substitution of Mrs. Hunt to the bond; for this was done by the written agreement of the plaintiff and defendants, and did not alter or affect their mutual relations.  On

this point the argument of the appellants is that the plaintiff's action rests upon this agreement, and could not be maintained without it, "because the release of John B. Hunt would have released the other sureties." And "as the action rests upon this new agreement, the statute . . . . runs from its date." But the release of Hunt, by operation of the statute—even in the absence of the written request not to sue—would not, it seems, have released the other sureties, even at common law (1 Parsons on Contracts, 29; *Ward v. Johnson*, 13 Mass. 151, 152; 20 Am. & Eng. Ency. of Law, 751); and, at least, could have no such effect under the code provisions. (Civ. Code, secs. 1432, 1543, 2819, 2823, 2840, 2848.) And were the law otherwise it would still have the same effect with reference to the substituted surety; so that the case is in no way different from what it would have been if the substitution had not been made.

As to the instructions: Several points are made on the instructions, which will be considered *seriatim*.

1. One of the grounds of objection relates to the defense of the statute of limitations, and has already been considered. But to prevent misapprehension, it may be well to say that we do not concur in that portion of the charge of the court (section 16) in which the jury was in effect instructed that if they believed the written request of the defendants made July 1, 1892, was made for the purpose of allowing time for the collection of securities in plaintiff's possession, etc., then that the action was not barred "if . . . . begun within four years next after the completion of the collection and disposal of such notes and securities." It may be—though we do not decide the point—that, in such case, the effect of the agreement would be merely to suspend the operation of the statute (*Smith v. Lawrence, supra*); and that there would remain for bringing suit only the balance of the original four years after deducting the time of suspension. Nor are we satisfied that the contract is susceptible of the construction that it related, with reference to time, to the object specified—namely, the collection of the securities. Other purposes were also contemplated—as, e. g., the interests of the bank, and the delay contemplated beyond the time necessary for realizing assets would still remain indefinite.

In the view we have taken of the case, however, the error is immaterial.

2. The principal question involved in the case—besides that of the statute—is thus stated in the opinion of the court below, in a passage cited in the briefs of both parties:

"It was shown by the evidence that in the course of the bank's administration of the securities received by the plaintiff upon the liabilities of Hunt it did not always proceed by the usual and regular legal process, but accepted payment sometimes in property at a fixed price, and sometimes exchanged one security for another, or released mortgages for less than their face value, or extended time of payment and renewed notes, much as an ordinary business man would do in the effort to convert into money assets of doubtful value. The jury were instructed in substance to the effect that if either one of the defendants consented or agreed to these various arrangements, dispositions, releases, renewals, and compromises, as they were made, such consent of one was binding upon all the joint debtors, and that those who did not consent could not claim a release from liability on the bond by reason of these proceedings of the plaintiff."

We concur in this view of the law, and generally with the reasoning of the court as quoted in respondent's brief. (1 Parsons on Contracts, *21-*27; Code Civ. Proc., sec. 1870, subd. 5.) It was on this ground that, at common law, the release of one of several joint obligors released all (2 Chitty on Contracts, 1154, note); and that a release by one of joint obligees bound the others. (1 Parsons on Contracts, *21-*27.) But the power of each of the parties interested to act for the others is confined to the contract by which the relation is created, and cannot extend to the making of new contracts. Hence, as held in many cases cited by the counsel and by the court, the admission or promise of one of several joint obligors cannot avail to revive as against the others a cause of action barred by the statute; or, perhaps, to suspend the running of the statute. Nor after the dissolution of a partnership can one of the parties, in general, make contracts for the other. But, in the latter case, each partner still has the power to act in closing up the business, and to that end may deal with the assets of the

firm; and so, in the present case, each of the sureties had the power to act with reference to the collaterals held by the bank.

3. The instruction we have been considering was not given absolutely, but conditionally only, upon the jury finding certain other facts to be true, among which was the fact, hypothetically stated, that "the defendants were appointed by the board of directors of said bank as a committee to take charge of such matter and realize the most that could be obtained from such collaterals for the benefit of the bank and the protection of themselves as sureties upon the bond"; and the balance of the instruction was conditioned on their finding to that effect. This is complained of by the appellants on the ground that there was no evidence "that the defendants were given charge of the collaterals, or had anything to do with the disposition of them"; and that the idea was thus conveyed to the jury that there was such evidence. There was in fact no such evidence, and this part of the instruction should not have been given; but the error was not one to be complained of by the defendants—as against whom the effect of the instruction given was simply weakened by the condition imposed on it. Nor, assuming the instruction to be otherwise correct (as we hold), is the fact material whether the defendants had charge of the collaterals or not. For the only materiality of the fact would be to show their assent to the manner of their disposition by the bank, and this, under the instruction, was sufficiently shown by showing the assent of any one of them; and the assent of at least one was admitted.

As to the denial of nonsuit: One of the grounds of the motion for nonsuit was the bar of the statute of limitations, which has already been sufficiently considered. The others relied on relate to the first, fifth, seventh and eleventh causes of action set up in the complaint. We are of opinion that there was no ground for nonsuit with reference to either cause of action.

1. In the first cause of action the facts, so far as material to the motion, were that S. B. Hunt loaned to himself the money of the bank, in the several amounts specified, and that these were carried by him into the new note made in the name of South Rialto Land and Water Company, which was simply a renewal of his own notes; and these facts were fully proved,

which was sufficient to support the verdict.    (Civ. Code, secs. 578, 2229, 2230.)

2. With reference to the fifth cause of action, the point is that it appeared from the evidence that the loan to Douglas—for which the plaintiff sought to charge the defendants—had been paid. But the evidence relied upon by appellant to establish this point is not very satisfactory; and there was other evidence that it had not been paid.

3. The seventh cause of action is for one thousand dollars, alleged to have been received by Hunt from Gerner, and to have been appropriated by him. It is claimed by the respondent's attorneys that there was evidence that this money was received and appropriated by Hunt as alleged "to at least the amount of eight hundred dollars"; and in this he seems to be sustained by the record. But this is an admission that the plaintiff failed to prove this cause of action as to the remaining two hundred dollars; and this amount, with legal interest from July 11, 1889, should be released.

4. With reference to the eleventh cause of action—which was for the conversion of three hundred shares of Simi Land and Water stock, given as collateral with the first note of the Rialto Land and Water Company—there was evidence tending to prove the fact alleged; which is sufficient to support the verdict.

As to other rulings of the court, we see nothing in them to justify a reversal. In most of them there was in fact no error; in others the error, if any, was immaterial. The case, on the whole, was fairly presented to the jury, except as pointed out with reference to the seventh cause of action; and whatever injury was done to the defendant by the error there occurring can be cured by a release of the excess unproved.

The judgment and order denying a new trial are therefore reversed, unless the plaintiff, within twenty days after the filing of the *remittitur*, file with the clerk of the court a release of the sum of two hundred dollars, with legal interest from July 11, 1889. But, if such release be filed within the time mentioned, the judgment and order are to be affirmed. And it is so ordered.

A hearing in Bank was denied in each of the above appeals, and in the order denying a rehearing in appeal L. A. No. 783, the court in Bank, on the 3d of November, 1900, amended its judgment by ordering that the appellants recover their costs of appeals.