[L. A. No. 7363. In Bank.—July 30, 1925.].

## MOLLIE A. DEFREES BROWNRIGG, Appellant, v. CARRIE DEFREES, as Administratrix, etc., Respondent.

[1] LACHES—EQUITY—PREJUDICE.—Mere delay in commencing an equitable proceeding without a showing of inequitable conduct or prejudice suffered thereby is not sufficient to bar the action.

[2] ID.—ACTION AT LAW—DELAY—STATUTE OF LIMITATIONS.—An action upon a rejected claim against the estate of plaintiff's deceased father to recover certain payments owing by reason of the breach of a contract for plaintiff's support is an action at law; and, in such an action, or where the plaintiff asserts no equitable rights, the statute of limitations, rather than the doctrine of laches, furnishes the rule of decision.

[3] ID. — AGREEMENT TO SUPPORT DAUGHTER — DELAY IN ASSERTING RIGHTS—ABSENCE OF PREJUDICE.—The question of laches is always relative to the circumstances of each particular case; and in this

---

1. When equity will refuse relief because of laches, notes, 54 Am. Dec. 130; 2 Am. St. Rep. 795; 23 Am. St. Rep. 148.

Enforcement in equity of stale claims, note, Ann. Cas. 1914B, 314. See, also, 10 R. C. L. 396; 10 Cal. Jur. 523.

action upon a rejected claim against the estate of plaintiff's deceased father to recover certain payments owing by reason of the breach of a contract for plaintiff's support, no showing was made that the delay of about twenty years by plaintiff in asserting her rights had been productive of any hardship or injustice to the representative of decedent's estate or to his heirs at law.

[4] STATUTE OF LIMITATIONS — AGREEMENT TO SUPPORT AFFLICTED DAUGHTER—GRATUITOUS ACT.—Where a parent owes a legal and moral duty to support, maintain, and educate a minor child, who is deprived of the sense of hearing and unable to speak and without means, an agreement on the part of such parent to contribute a specified sum per month for the support, maintenance, and education of said child, until she shall attain the age of twenty-one years, and to waive for ninety-nine years the bar of the statute of limitations on his own delinquencies or inability to make prompt payments, as by contract provided, cannot be regarded as a mere gratuitous act.

[5] ID.—WAIVER OF STATUTE—EXERCISE OF PERSONAL RIGHT—PUBLIC POLICY.—Where a parent voluntarily waives the bar of the statute of limitations on his own delinquencies or inability to make prompt payments under a contract for the support, maintenance, and education of his minor daughter, he merely exercises "a personal right for the benefit of the individual which may be waived"; and no law established for a public reason is contravened by a private agreement to waive the statute of limitations.

[6] ID.—FAILURE TO ASSERT RIGHTS—WAIVER OF PRIVILEGE.—The privilege of the statute of limitations, being a personal privilege, is deemed to be waived unless the debtor asserts his rights under it by demurrer or plea, as the law will not plead the statute for him.

[7] CONTRACTS — PAYMENT — PRESUMPTION — EVIDENCE.—In an action upon a rejected claim against the estate of plaintiff's deceased father to recover certain payments owing by reason of the breach of a contract for plaintiff's support, although plaintiff (a deaf-mute) is not called as a witness, a presumption of payment based upon the lapse of years after the payments became due cannot be indulged, where the mother, with whom plaintiff had resided during the greater part of her lifetime, and who had the burden of her support, and to whom the payments were to be made under the contract, testified that no moneys except the first monthly allowance were paid by the father, and the attorney for the wife in the divorce proceeding leading up to the making of said contract, who is also the attorney for plaintiff in the action at bar, testified that on many occasions he attempted to collect the monthly allowances,

5. Validity of waiver in contract of statute of limitations, note, Ann. Cas. 1916A, 686. See, also, 17 R. C. L. 886; 16 Cal. Jur. 570.

6. See 17 R. C. L. 988; 16 Cal. Jur. 603.

but repeatedly met with failure, that the father told him that all remittances would be sent to him (the attorney) to be delivered to the wife, but that no remittances were received except the first monthly allowance.

(1) 21 C. J., p. 223, n. 30.   (2) 21 C. J., p. 214, n. 60.   (3) 21 C. J., p. 223, n. 30.   (4) 37 C. J., p. 724, n. 57.   (5) 37 C. J., p. 723, n. 48.   (6) 37 C. J., p. 1205, n. 65, p. 1213, n. 52.   (7) 19 C. J., p. 347, n. 70.

APPEAL from a judgment of the Superior Court of Santa Barbara County. S. E. Crow, Judge. Reversed.

The facts are stated in the opinion of the court.

Welles Whitmore for Appellant.

Balaam & Balaam and C. Roy Garnett for Respondent.

SEAWELL, J.—This appeal is presented by a bill of exceptions. Appellant, Mollie A. deFrees Brownrigg, is the issue of the marriage of John M. deFrees, deceased, and his former wife, Susan S. deFrees. In the year 1888, the wife brought an action against her husband for a decree of divorce. Mollie, who is a mute, was then a minor of about the age of fifteen years. The ground of the divorce action was cruelty and a decree of divorce was awarded the wife on that ground. She was also awarded the custody of said deaf and dumb minor child. As a consideration of the wife's forbearance in the matter of alimony and her consenting to the fixing of the amount that should be paid by the husband for the care and maintenance of said minor by contract, rather than by the court's decree, the following contract or agreement of maintenance as to said minor was executed by said John M. deFrees:

"In the Superior Court of the State of California, in and for the County of Alameda.
"No. 5008.
"Susan S. deFrees, Plaintiff,
vs.
"John M. deFrees, Defendant.

"Whereas, a decree of divorce was this day granted in favor of plaintiff in the above entitled action; that in said

decree no alimony is allowed and no provision is made for the care and maintenance of Mollie A. deFrees, minor daughter of plaintiff and defendant.

"Now, therefore, I, John M. deFrees hereby promise and agree to pay to my said daughter $10.00 per month, on the 1st day of each and every month, commencing on the 1st day of September, 1888, until said Mollie A. deFrees arrives at the age of 21 years, on to-wit: The 27th day of January, 1894. Said payments are to be made to her mother, Susan S. deFrees.

"I further promise and agree not to plead the Statute of Limitation to any payment that may become due under this contract, and I hereby, on behalf of myself, my heirs, executors and administrators, waive the Statute of Limitations as to any and all claims that may accrue against me under this contract for the period of 99 years.

"Dated: August 9th, 1888.

"JOHN M. DEFREES.

"Witness:

     "WELLES WHITMORE."

The foregoing contract was received as a part of the evidence in the case. None of the payments provided therein was ever made except one, in the sum of $10, which was paid September 1, 1888. John M. deFrees remarried and became the father of several children by a subsequent marriage to the administratrix herein and died September 1, 1918. A claim was duly presented by plaintiff to the said administratrix of the estate of John M. deFrees, deceased, which included the full amount claimed to be due under the contract with interest to the date of his death. Said claim was rejected by said administratrix and the present action was brought to recover the principal with interest thereon, amounting to the sum of $2,036.80.

The complaint was demurred to on the ground that the action was barred by section 337, subdivision 1, of the Code of Civil Procedure. Said demurrer was overruled and defendant answered, but did not plead the bar of the statute as a defense to the action. Neither was laches pleaded, either specially or generally, as a defense.

The defendant, upon information and belief, alleged as a special defense to the action, that on June 7, 1899, John M. deFrees and his wife duly executed and delivered to plain-

tiff (appellant) a deed to certain described property, situated in the county of St. Joseph, state of Indiana. It is alleged that said conveyance was made by John deFrees and his wife and was accepted by plaintiff as and in full satisfaction of any and all claims then existing or which might thereafter exist against the said John M. deFrees on account of said agreement dated August 9, 1888, and made for the support and maintenance of said minor.

The court found that the contract was made and executed as alleged in the complaint. It further found, contrary to the allegations of the complaint, that it was not true that the said John M. deFrees did not pay the amounts therein provided, or any of them, save and except the sum of $10; also that it was not true that said monthly payments contracted and agreed to be paid by said John M. deFrees under said contract were unpaid and past due. The finding as to the payments under the contract having been made is absolutely unsupported by any evidence in the case and is unsupportable upon any principle of law applicable to the facts disclosed by the record. It was further found by the court that the claim made at the trial by respondent that a conveyance of certain real property, executed by John M. deFrees and his wife to plaintiff some years prior to the death of the former, was made in full satisfaction of the claim now pressed, was not true. There is evidence in the record to support this finding made in appellant's favor. Finally, it was found that plaintiff had been guilty of laches in delaying the commencement of her action. As a conclusion of law, doubtless based on the theory of laches, the court concluded that judgment should go against the plaintiff and for the defendant. No finding whatever was made on the bar of the statute of limitations, a question raised by the demurrer, but the following appears in the findings of fact: ''(10). That it is true that the plaintiff has been guilty of laches in commencing the above-entitled action.'' It will be observed that said purported finding of fact amounts to nothing more than a conclusion of law. No fact is stated or suggested as the basis of the conclusion and no other reference to laches is anywhere to be found in the pleadings, findings, or record of the case. This being so no sufficient finding as to appellant being guilty of laches was made. [1] Mere delay in commencing an equitable

proceeding without a showing of inequitable conduct or prejudice suffered thereby is not sufficient to bar the action. (*Dufour* v. *Weissberger,* 172 Cal. 223 [155 Pac. 984]; *Mc-Gibbon* v. *Schmidt,* 172 Cal. 70 [155 Pac. 460].)

[2] This action is one at law by which plaintiff sought to recover certain payments owing by reason of a breach of contract by the defendant's intestate, and it has been held in this state, and generally elsewhere, that the defense of laches is a creature of equity. (*Trail* v. *Firth,* 186 Cal. 68 [198 Pac. 1033]; 10 Cal. Jur. 522; 21 C. J. 214.) "It is scarcely necessary to say that complainants cannot avail themselves as a matter of law of the laches of the plaintiff in an ejectment suit. Though a good defense in equity, laches is no defense at law." (*Wehrman* v. *Conklin,* 155 U. S. 314 [39 L. Ed. 167, 15 Sup. Ct. Rep. 129; see, also, Rose's U. S. Notes]; see, also, *Anzar* v. *Miller,* 90 Cal. 342 [27 Pac. 299]; *Waits* v. *Moore,* 89 Ark. 19 [115 S. W. 931]; *Wells* v. *Western Union Tel. Co.,* 144 Iowa, 605 [138 Am. St. Rep. 317, 24 L. R. A. (N. S.) 1045, 123 N. W. 371]; *Commercial Security Co.* v. *Archer,* 179 Ky. 842 [201 S. W. 479].) In an action at law, or where the plaintiff asserts no equitable rights, "the statute of limitations, rather than the doctrine of laches, furnishes the rule of decision." (10 Cal. Jur. 526.) Respondent insists that the defense may be pleaded in bar to an action at law as well as an action in equity, but the cases, such as *Stevinson* v. *San Joaquin, etc.,* 162 Cal. 141 [121 Pac. 398], *Elliott* v. *Bunce,* 10 Cal. App. 741 [103 Pac. 897], *Emerson* v. *Kennedy Min. etc.,* 169 Cal. 718 [147 Pac. 939], and others cited to support her contention, are actions of an equitable nature.

[3] No showing was made that the delay had been productive of any hardship or injustice to the defendant or to the other heirs at law of decedent. If the decedent had complied with his contract and had paid the monthly allowances in accordance with his agreement his estate would have been proportionately reduced. The question of laches is always relative to the circumstances of each particular case. (*Dufour* v. *Weissberger,* 172 Cal. 223 [155 Pac. 984].) No circumstance, even considered as an equitable question, appears in aid of respondent in this case.

[4] We next come to a consideration of the effect of the clause in the contract which waives the running of the

statute of limitations. Placing one's self in the position of decedent at the time the contract was made it is not difficult to understand the considerations that moved him to freely waive the bar of the statute as against his afflicted daughter's claims upon him for care, maintenance, and education until she should attain the age of twenty-one years, a period of about six years. He owed her a legal and moral duty, and it is inconceivable that a normal parent should harbor a desire to evade, if he could, the first obligation of parental duty, especially when that duty is rendered doubly imperative by the heavy hand of affliction. The question of want of consideration for the execution of the contract is clearly out of the case. An agreement on the part of a parent under the circumstances of this case to contribute $10 per month for the support, maintenance, and education of his child, who is deprived of the sense of hearing and unable to speak and without means, until she should attain the age of twenty-one years, and to waive the bar of the statute on his own delinquencies or inability to make prompt payments, as by contract provided, cannot be regarded as a mere gratuitous act.

[5] In view of the circumstances in which the contract was made, it is not to be questioned that the decedent meant to waive the statute of limitations so long as he should live and if upon his death any of the monthly allowances remained unpaid to make such payments, notwithstanding the privilege of the statute, a charge upon his estate. The fixed period of ninety-nine years was inserted in the agreement upon the suggestion of the attorney in the divorce proceeding. Pending the settlement of the divorce action, decedent expressed himself as being willing to waive the statute of limitations as to his daughter "forever." The term "forever" was used relatively, of course, with reference to his mortal existence. Upon the suggestion of the attorney that a fixed period of ninety-nine years be inserted as the limit of the statute, decedent readily assented thereto. He was satisfied, beyond question, that he had no such expectancy of life. But he was doubtless aware of the duty which the law of this state imposed upon a parent as to his liability for the support and education of minor children and also as to his duty to adult children when they become sick or disabled or from any cause unable to maintain themselves. He agreed to

do no more than the law ordinarily would have compelled him to do, except as to the agreement to waive the privilege of the statute. This he voluntarily did. In so doing he was merely exercising a personal right for the benefit of the individual which may be waived. (*Tebbets* v. *Fidelity & Casualty Co.,* 155 Cal. 137 [99 Pac. 501].)  **[6]**  The privilege of the statute being a personal privilege is deemed to be waived unless the debtor asserts his right under it by demurrer or plea. (16 Cal. Jur. 603.) The law will not plead the statute for him. It is well settled by the decisions of this state, as well as by the courts of some other jurisdictions which have a statute similar to our section 3513 of the Civil Code, that no law established for a public reason is contravened by a private agreement to waive the statute of limitations. Said section provides as follows: "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."

It has been expressly held by this court in numerous decisions that the privilege conferred by the statute of limitations is not a right protected under the rule of public policy but is a mere personal right for the benefit of the individual which may be waived. In *Tebbets* v. *Fidelity & Casualty Co., supra,* the authorities sustaining the view that the statute may be shortened or waived by private agreement, as well as those which take the opposite view and hold that the statute cannot be so shortened or waived because of the question of public policy involved, are collated, reviewed, and distinguished. No doubt can longer exist as to the rule in this state. (16 Cal. Jur. 570.)

A degree of uncertainty finds expression in some of the decisions of this state as to whether the courts will place a limit of time beyond which the statute could not be suspended. Doubt on this question finds its first expression in this state, so far as our investigation has gone, aided by the industry of counsel, in the case of *Wells Fargo Co.* v. *Enright,* 127 Cal. 669 [49 L. R. A. 647, 60 Pac. 439]. That was a case wherein an agreement not to plead the statute of limitations was made in consideration of a promise by the creditor to refrain from instituting suit for the period of six months, before the expiration of which period the bar of the statute would otherwise have attached, and the plain-

tiff in that case forbore bringing suit for the period of time agreed upon. The court there held that the action, under the terms of the agreement, was brought within time inasmuch as the statute is one for the benefit and repose of individuals, and not to secure general objects of policy or morals. By way of argument, intermixed with possible *dicta,* the court further said:

" 'Its protection may, therefore, be waived in legal form, by those who are entitled to it; and such waiver, when acted upon, becomes an estoppel to plead the statute.' (Citing numerous cases to the same effect.) We think this is a correct statement of the law.

"The Supreme Court of the United States regarded such an agreement as operating by way of estoppel *in pais* to a defense under the statute of limitations. (*Randon* v. *Toby,* 11 How. 493 [13 L. Ed. 784, see, also, Rose's U. S. Notes].) Respondent cites cases from the District of Columbia, Maine, South Carolina, Vermont, Texas, Mississippi, New Jersey, Tennessee, and New York. We find that they support its position. See, also, Wood on Limitations, section 76, where it is stated that if the promise be made before the debt is barred, and in consideration of forbearance to sue and the creditor forbears, 'it is binding upon the debtor, and at least has the effect to keep the debt on foot until the statutory period, dating from such promise, expires, either by way of estoppel or as a conditional promise to pay the debt in case the plaintiff proves it.' Conceding that some of the cases cited by appellant tend to support its contention, they do not convince us that there is any rule or principle of public policy violated by an agreement to waive the statute of limitations under the circumstances here disclosed. It is probably true that after an agreement to waive the statute has been entered into, in consideration of forbearance to sue, the courts would place some limit of time beyond which the statute would not be suspended. In the case of 147 Massachusetts [*Kellogg* v. *Dickinson,* 147 Mass. 432 (1 L. R. A. 346, 18 N. E. 223)], cited by appellant, the action was brought after forty years. Some of the cases, as Mr. Woods does, place this limit within the statutory period, dating from the agreement, and this seems to be a reasonable limitation. But we are not called upon to de-

cide, and do not decide any further than that in our opinion
the present action was brought in time."

The agreement in that case to waive the statute was in
consideration of forbearance to sue and what is there said
with reference to the time limit beyond which the statute,
possibly, would not be suspended is nothing more than the
expression of questionable probability on a matter not neces-
sary to a decision in that case, as the last clause of the quoted
paragraph makes emphatic.

*State Loan, etc.,* v. *Cochran,* 130 Cal. 245 [62 Pac. 466, 600],
was a case wherein the sureties on a bond, who, upon being
sued on account of the defalcation of their principal, prom-
ised, in writing, pending the running of the statute of limita-
tions, in consideration that no further proceedings be taken
against them for the collection of any of the obligations aris-
ing out of their suretyship, to take no advantage of delays
thereafter incurred until they (said sureties) should "re-
quest that such proceedings be taken." Suit was brought
more than seven years after the occurrence of the breach
of the bond. It is there said: "With regard to the policy
of the law, there may be a question as to the validity of an
agreement to waive the statute, made as a part of the origi-
nal contract, or a subsequent agreement to waive the statute
for all time; and on that point we have authorities both
ways. (*Crane* v. *French,* 38 Miss. 531, 532; *Quick* v. *Cor-
lies,* 39 N. J. L. 11.) But in the former case—which holds
such a contract to be against public policy—the validity of
such agreements for a definite or limited time is admitted;
nor has any case to the contrary been brought to our atten-
tion except that of *Wright* v. *Gardner,* 98 Ky. 454 [33 S. W.
622, 35 S. W. 1116], which does not commend itself to
our consideration. The general rule is embodied in the
maxim, *Pacta legem faciunt inter partes;* and no reason, on
the score of public policy, or otherwise, can be suggested
why any exception should be made in this case. In this
state, at least, the validity of such agreements must be re-
garded as established. (*Wells Fargo* v. *Enright,* 127 Cal.
669 [49 L. R. A. 647, 60 Pac. 439].)" It was held that the
agreement on the part of the plaintiff *never* to sue until
*requested by the defendants* was invalid as to plaintiff.
But as there was a written request from the defendants
that proceedings should not be taken until requested by

them, accompanied by a written promise to waive the statute if the plaintiff would forbear legal proceedings, nevertheless the compliance of the plaintiff with the request constituted a sufficient consideration for the promise. The statute was held not to run from the date of the written agreement but from the time the parties ceased to act upon it, which was at a subsequent time.

*Kemper* v. *Industrial Acc. Com.*, 177 Cal. 618 [171 Pac. 426], is also a "forbearance to sue" case. It merely holds, and no case in California states a contrary rule, that: "It is undoubtedly true that parties to a controversy may enter into an agreement to forego the statute of limitations for a definite period and that such an agreement may operate as an estoppel to a plea of the statute. (*Wells Fargo & Co.* v. *Enright*, 127 Cal. 669 [49 L. R. A. 647, 60 Pac. 439]; *State Loan & Trust Co.* v. *Cochran*, 130 Cal. 245 [62 Pac. 466].)"

There is, however, direct authority to the point that the statute can be continuously waived by private agreement. Such a case is *State Trust Co.* v. *Sheldon et al.*, 68 Vt. 259 [35 Atl. 177]. As a part of the promises and undertaking in the declaration therein mentioned, and at the time of making the same, the defendants agreed in writing to waive the statute of limitations in respect to such promises and undertaking. Relying upon the agreement, the plaintiff did not bring its action within the time limited by the statute. The question before the court was whether the defendants were estopped by the agreement from pleading the statute of limitations in bar of the action. It was there urged that the agreement to waive the statute was void because, by private agreement, it undertook to avoid a statute, and was against public policy. The court in disposing of the questions before it said: "The statute limiting the time within which actions shall be brought is for the benefit and repose of individuals and not to secure general objects of policy or morals. Its protection may, therefore, be waived in legal form by those who are entitled to it, and such waiver, when acted upon, becomes an estoppel to plead the statute. (Sedgw. Stat. and Const. Law, 2d ed., 86, 87; *Quick* v. *Corlies*, 39 N. J. L. 11; *Burton* v. *Stevens*, 24 Vt. 131 [58 Am. Dec. 153]; *Gay* v. *Hassom*, 64 Vt. 495 [24 Atl. 715]; *Random* v. *Toby*, 11 How. (U. S.) 493 [13 L. Ed. 784, see,

also, Rose's U. S. Notes].)    When such waiver is made it
is *continuous,* unless by its terms it is *limited to a specified
time.*    There was no such limitation in the waiver of the
defendants.    We, therefore, hold that they are estopped
from pleading the statute of limitations in bar of plaintiff's
action.''    (Italics supplied.)    (See, also, *Mann* v. *Cooper,* 2
App. D. C. 226; *Parchen* v. *Chessman,* 49 Mont. 326 [Ann.
Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469]; *Jordan* v.
*Jordan,* 85 Tenn. 561 [3 S. W. 896]; *Lyndon Sav. Bank* v.
*International, etc.,* 78 Vt. 169 [112 Am. St. Rep. 900, 62 Atl.
50]; *Andrews* v. *Cosmopolitan Bank,* 183 App. Div. 787,
[171 N. Y. Supp. 875]; *City of Springfield* v. *Deming,* 215
Mo. App. 309 [252 S. W. 91]; Wood on Limitations, secs.
41, 42, 53e.)

Admittedly there is a line of cases which hold that the
statute cannot be waived.    (*Crane* v. *French,* 38 Miss. 503;
*Nunn* v. *Edmiston,* 9 Tex. Civ. App. 562 [29 S. W. 1115];
*Bridges* v. *Stephens,* 132 Mo. 524 [34 S. W. 555]; *Smith*
v. *Gillette,* 59 Tex. 86; *Young* v. *Sorenson* (Tex. Civ. App.),
[154 S. W. 676]; *Moxley* v. *Ragan,* 10 Bush (Ky.), 156
[19 Am. Rep. 61].)    Those cases, however, are contrary
to the declared doctrine of this state and to most of the
states which have a statute similar to ours.    The decisions
of the states  which recognize the right to waive the statute
by private contract  turn upon the interpretation given by
the courts to the promise or agreement upon which the
waiver is asserted.    The intention of the parties must always
be considered in the light of the circumstances of each
particular case.    A promise not to take advantage of the
statute pending negotiations for allowing further time to
arbitrators to report, or pending negotiations for the ad-
justment of the differences between litigants, will not be con-
strued to be an agreement never to take advantage of the
statute but an agreement that the statute should not run
while the settlement was pending.    After negotiations have
concluded the statute will begin to run.    (*Cowart* v. *Perrine,*
21 N. J. Eq. 101.)    So, too, it has been held in cases where
the circumstances seem to justify the inference that it was
not intended that the statute was to be suspended for all
time, that it is suspended for a reasonable time only.

The language of the agreement to waive the statute in the
instant case leaves no room for the indulgence of infer-

ences or implication. The intention of the decedent is expressed in clear, unequivocal language. There can be no doubt as to what he meant to do. If no rule of public policy or morals is violated by an agreement to waive the statute, and if the rule is embodied in the maxim, *Pacta legem faciunt inter partes,* as was held by this court in *State Loan etc. Co.* v. *Cochran, supra,* no sufficient reason is shown in the instant case why the agreement made by the parties thereto should not be respected. No decision of this state holds to the contrary. That the daughter forbore to sue her father, or harass him with legal process, should not, considering the relationship existing between them, be now urged against her. She relied upon his promise that the bar of the statute would never be pleaded against his obligations to her.

[7] Respondent makes the point that the evidence was not sufficient to show that the decedent had not paid the monthly allowances according to his agreement, and under some authorities (1 A. L. R. 781; *Gage* v. *Downey,* 79 Cal. 140 [21 Pac. 527, 855]), in the absence of rebutting circumstances, debts will be presumed paid after the lapse of twenty years from the time they become due. Such a presumption cannot be indulged here. The appellant, doubtless because of her afflictions, was not called as a witness in the case. The mother, however, with whom appellant had resided during the greater part of her lifetime and who had the burden of her support, testified that no moneys except the first monthly allowance of $10 had been paid by the father in accordance with his agreement; that had he made any further or other payments she would have had knowledge of them. The agreement provided that all payments should be made to the mother. The attorney for the wife in the divorce proceeding, who is also attorney for appellant in this proceeding, testified that he had upon many occasions covering a series of years attempted to collect the unpaid monthly allowances but had repeatedly met with failures. The decedent, said attorney testified, told him that all remittances would be sent to him to be delivered to the wife. No remittances were received except the first monthly allowance. No serious claim was made at the trial or is made here that any payments, except the first payment of $10, have actually been made. There is no merit in the

contention that the evidence is sufficient to show that the amount sued for, or any part thereof, was at any time paid by decedent.

The judgment appealed from is reversed.

Shenk, J., Richards, J., Lennon, J., Lawlor, J., Waste, J., and Myers, C. J., concurred.