[Civ. No. 5775.   Third Appellate District.—March 26, 1937.]

THE HILLSIDE PACKING ASSOCIATION, Appellant, v.
C. O. COWLES et al., Respondents.

James R. McBride for Appellant.

John Preston King, Farnsworth, Burke & Maddox and James K. Abercrombie for Respondents.

THOMPSON, J.—The plaintiff, which is a cooperative fruit marketing association, has appealed from a judgment refusing to grant an injunction prohibiting the defendant, C. O. Cowles, from delivering his crop of oranges for the year 1934 to the Native Son Orchards Company, contrary to his written agreement with the association. The marketing contract which Cowles signed contained a clause permitting him to withdraw therefrom upon giving a specified notice. Cowles owed the Bank of America a sum of money. By the terms of his contract with the plaintiff he agreed to authorize it to pay the bank from his account with the association the sum of ten cents per box for all fruit so marketed. Two months after signing the marketing agreement, the bank for its own benefit procured Cowles to sign a written waiver of the withdrawal clause of his contract. The association was not a party to that waiver. In June, 1934, Cowles notified the plaintiff of his withdrawal from the contract pursuant to the terms thereof, and subsequently contracted with the defendant Mac-Donald for the Native Son Orchards Company to market his oranges. The bank was not a party to the original marketing agreement, and it consented to his withdrawal from that contract.

The appellant contends that Cowles' waiver of the withdrawal clause of his marketing agreement precludes him from terminating the contract and that the injunction against delivering his crop of oranges to the Native Son Orchards Company should therefore issue.

The plaintiff is a nonprofit, cooperative fruit-marketing association, duly organized, with its principal place of business at Lindsay in Tulare County. The defendant, Cowles, owns 207 acres of citrus fruit land in Tulare County. September 25, 1933, he signed a marketing contract with the plaintiff, agreeing to deliver to the association his entire crop of oranges produced on a specified 166-acre tract of his land for a term of fifteen years. Section 6 of that contract authorizes the producer to withdraw therefrom upon written notice served during the first fifteen days of June of any year within the term of the agreement. That paragraph reads in part:

"Any party of the second part may be released from the terms of this agreement and end the same as to him, by filing with the secretary of the said party of the first part a written notice of his desire to be so released during the first fifteen (15) days of June of any year during the term of this agreement. Said release and termination shall thereupon become effective at the close of the then crop year, . . . "

At the time of executing the above crop marketing agreement, Cowles owed the Bank of America at Exeter the sum of $6,506.57. On the last-mentioned date Cowles authorized the association in writing to pay the bank from the proceeds of his account the sum of ten cents per box on all of his fruit so packed and marketed. This request was accepted by the association in writing. The authorization reads in part:

"You are hereby authorized to pay to the Bank of America at Exeter, California, and charge to my account, ten cents per packed box as part of the packing charges on the navel and valencia crops of oranges grown on my orange acreage in Tulare County, California, and which oranges are being shipped through your association."

About two months later, on November 18, 1933, independently of the plaintiff, and for the sole protection of the bank, it prepared and procured Cowles to sign a letter addressed to the Hillside Packing Association, notifying it of his waiver of the privilege of withdrawing from the marketing agreement as provided by section 6 thereof. This notice of waiver was executed without the knowledge of the plaintiff and without consideration therefor as between Cowles and the association. It was left with the bank and forwarded to the association by it. That notice contained the following paragraph:

" . . . In consideration of your Association making this payment of ten cents per box as aforesaid to the Bank of America, Exeter Branch, until all the indebtedness owed to the Bank, together with interest, is paid in full, *I hereby waive the privilege of withdrawing from your Association as provided in paragraph 6 of the contract* which I signed with other members with your Association, until such time that the Bank of America, Exeter Branch, has been paid in full, together with all interest, by the payment of the ten cents per box as aforesaid by your Association to the said Bank of America."

June 13, 1934, with the knowledge and consent of the Bank of America, with which he had made other arrangements for payments to be made on his indebtedness, Mr. Cowles notified the plaintiff in writing pursuant to the terms of paragraph 6 of his marketing agreement of his withdrawal from the contract. On the last-mentioned date Cowles signed a marketing agreement to deliver all of his citrus fruit from the 166-acre tract of Tulare County land for the year 1934 and thereafter to the Native Son Orchards Company, of which R. O. MacDonald was president. As a part of the last-mentioned agreement, provision was made for the payment to the Bank of America on Cowles' indebtedness of ten cents per box for all of his fruit packed and marketed thereunder.

The plaintiff refused to accept the withdrawal of the defendant Cowles from its agreement, contending that his previous notice of waiver of that privilege precluded him from doing so. In November, 1934, this suit was commenced to enjoin Cowles from delivering fruit from his Tulare orchards to the Native Son Orchards Company, or to any other party contrary to his contract with plaintiff. A temporary restraining order was issued. The cause was tried by the court. Findings were adopted favorable to the defendants. A judgment was accordingly rendered vacating the restraining order and denying the injunction. From that judgment the plaintiff has appealed.

The injunction was properly denied. The waiver of paragraph 6 was not a part of the contract with plaintiff. It was an independent contract between Cowles and the bank. That waiver was procured two months later by the Bank of America solely for its benefit and without the knowledge of

the association. It was executed without consideration as between Cowles and the plaintiff.

The waiver added a new provision and an additional burden upon Cowles from those which were previously included in his marketing agreement with the plaintiff. The waiver constituted a separate contract with the bank. (*Anderson v. Adler*, 42 Cal. App. 776 [184 Pac. 42].) But it was not a part of the contract with the association. It constituted a vital change in his contract with the association. (*Main St. etc. Co.* v. *Los Angeles Traction Co.*, 129 Cal. 301 [61 Pac. 937].) To render the waiver a contract with the association it would necessarily have to include all the elements of a binding agreement with it, including the meeting of the minds of the respective parties and a valid consideration therefor as between Cowles and the association in order to bind them. (*State Loan & Trust Co.* v. *Cochran*, 130 Cal. 245 [62 Pac. 466, 600]; *Alden* v. *Mayfield*, 164 Cal. 6 [127 Pac. 45]; *Myers v. Herskowitz*, 33 Cal. App. 581 [165 Pac. 1031].) As between Cowles and the plaintiff the waiver lacked these essential elements to render it binding. (*Wilson* v. *Shea*, 29 Cal. App. 788 [157 Pac. 543].)

█ The waiver was signed for the sole benefit of the bank and not expressly for the benefit of the association. On the contrary, it was not made for the benefit of the association at all. Moreover, it was expressly rescinded before any attempt was made to enforce it. Section 1559 of the Civil Code provides that:

"*A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.*"

The testimony of Tom B. Coughran, the manager of the Exeter branch of the Bank of America, is conclusive of the fact that the waiver was procured by the bank for its exclusive benefit.

█ It was not prejudicial error for the court to exclude from the evidence a certain letter from Mr. Coughran, the manager of the bank, to Cowles, dated October 31, 1933, suggesting the terms upon which the bank would consent to Cowles withdrawing from his contract with the plaintiff. The letter merely stated that the bank would not consent to a rescission of that contract unless Cowles first obtained a release of his contract from the American Fruit Growers, Inc., a guaranty that any other marketing agency with which he

might subsequently contract would pay to the bank ten cents per box for all his fruit delivered to it, and an agreement that the Security First National Bank of Los Angeles would not interfere with such payment to the Bank of America of ten cents per box. An objection to the introduction of this letter was sustained on the ground that it is incompetent, but it was marked for identification. The authenticity of the letter was not established. It was not referred to while the author, Mr. Coughran, was on the witness stand. It would be competent only as tending to contradict the evidence of the bank manager regarding the terms upon which he said the bank did consent to Cowles rescinding his agreement with the plaintiff. If the letter was intended to impeach him, the witness was entitled to have the letter called to his attention, so that he might explain the inconsistency, if any such variance existed. The only reason for the offer of this letter suggested by counsel for the plaintiff was ''to explain the circumstances surrounding the making of that waiver''. We are not informed of any manner in which it is contended the letter throws any light whatever on the execution of the waiver. It was clearly hearsay evidence, and it was incompetent.

Moreover, the appellant assigns no reason in his briefs why he deems the exclusion of that evidence to have been erroneous. He does not even point out that particular ruling of the court as erroneous. All that he says regarding the effect of that ruling is the following indefinite and general statement, to wit:

''Any erroneous ruling, by virtue of which a party is precluded from introducing evidence in support of his cause of action is an error of law even though the evidence offered is of an inconclusive nature.''

This is an insufficient assignment of error.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.