[Sac. No. 1774. In Bank.—February 1, 1912.]

## J. J. STEVINSON, Respondent, v. SAN JOAQUIN AND KINGS RIVER CANAL AND IRRIGATION COMPANY, Appellant.

WATER — INJUNCTION AGAINST UNLAWFUL DIVERSION — ABSENCE OF
    LACHES — FAILURE TO OBJECT TO CONSTRUCTION OF DIVERTING
    WORKS.—In an action by a lower riparian proprietor to enjoin the
    unlawful diversion of the waters of a stream, laches cannot be im-
    puted to the plaintiff, so as to defeat his right to an injunction,
    merely by reason of his failure to object to the construction of the
    diverting works of the defendant, after he acquired knowledge
    thereof, where there is nothing further in the evidence to charge the
    plaintiff with actual or imputed knowledge that the works under
    construction would divert more water than the defendant was other-
    wise entitled to, and the evidence does show that the president of the
    defendant, while such works were being constructed, assured the
    plaintiff that they would not have such effect.

ID.—LACHES NEED NOT BE PLEADED,—REFUSAL OF AMENDMENT SETTING
    UP LACHES—REVIEW ON APPEAL.—The defense of laches need not be
    pleaded, and when it appears from the evidence that the seeker of
    relief in equity has been guilty of laches the court will deny such
    relief *sua sponte* without any pleading. Therefore, the refusal of
    the court, at the close of the trial, to permit an amendment of the
    answer charging laches amounted to a declaration and finding to the
    effect that the plaintiff was not guilty of laches, and the question
    before the appellate court then is whether the evidence sustains the
    court's ruling in this regard.

APPEAL from a judgment of the Superior Court of Merced County. M. L. Short, Judge.

The facts are stated in the opinion of the court.

Edward F. Treadwell, and Frank H. Short, and J. P. Langhorne *Amici Curiæ*, for Appellant.

James F. Peck, for Respondent.

THE COURT.—A rehearing was granted in this case in order that we might further consider the contentions of appellant, that in addition to the water to which it was entitled by prescription, it had the right to take a further quantity because

plaintiff by his laches had lost the right to object to such diversion, and that plaintiff, by permitting large numbers of irrigators to use the water in excess of 760 cubic feet per second, without any protest on his part, had placed himself in a position wherein he was not entitled to the harsh remedy of injunction, but should be relegated to his action for damages. On further study of the matter, however, the court is satisfied with and hereby readopts the former opinion, prepared by Mr. Justice Henshaw, which is as follows:—

"Plaintiff, a lower riparian proprietor on the San Joaquin River, brought this action to enjoin defendant's alleged unlawful diversion of the waters of the stream. Defendant answered asserting prescriptive title to the waters of the river to the extent of 900 cubic feet per second; alleged that a portion of this water had been used by defendant for the irrigation of riparian lands and that the remainder had been supplied and sold to the public and had been used for beneficial purposes. After trial the court found that defendant had prescriptive title to 760 cubic feet of water per second but to no greater quantity and enjoined the defendant from diverting more than this quantity.

"The judgment, in so far as it fixes the amount of water to which defendant had acquired prescriptive title against the lower riparian proprietor, is acquiesced in by both parties. This appeal, however, taken by defendant, is addressed to the asserted error of the court in refusing to allow amendments proposed by defendant to its answer after the close of the testimony and before the submission of the cause. These amendments declare, first, that defendant had acquired by continuous and beneficial use a prescriptive title to 1200 cubic feet of water per second (the answer upon which the action was tried asserting such prescriptive title to only 900 cubic feet per second); second, the amendment alleged the construction of an 'Outside' canal which headed in and took water from the main canal about three miles below the intake of the main canal; that in 1898 water was supplied from this 'Outside' canal to the owners of land which could not be supplied from the main canal and this irrigated more than 4200 acres of land; that in 1898 the 'Outside' canal was further extended and furnished water to 500 acres more; that in 1898 the defendant constructed its present weir in the river at

about the same location as its earlier brush dam, the purpose
of the weir being the better to conserve the water and make
more certain the securing of the supply to which defendant
was entitled; that at the time of the construction of the 'Out-
side' canal and of the weir plaintiff had notice and knowledge
thereof and of the purpose to devote the water to public use
upon land non-riparian to the river and knew that he and his
lands would be thereby deprived of that quantity of water;
that at no time prior to the 12th day of August, 1899, the
date of the commencement of the action, did the plaintiff make
to the defendant any objection whatsoever to the construction
of the works or the diversion of the water, or give notice of
any intention to object to the same, but on the contrary
plaintiff acquiesced in the construction and diversion.

"The defendant was refused permission to file these amend-
ments which were offered as amendments conforming to the
proofs in the case.  The asserted error of the court's refusal is
the sole ground for reversal presented upon this appeal.  The
proposed amendment asserting prescriptive title to the 1200
cubic feet per second, instead of 900 cubic feet per second as
alleged in the original answer, becomes of no consequence in
view of the fact that the court found prescriptive title in but
760 cubic feet, and that this determination has been ac-
quiesced in.  Appellant's argument is addressed wholly to
the proposition that plaintiff by his laches and delay in com-
mencing his action after knowledge of all the facts, deprived
himself of any right which he might otherwise have had to
an injunction, under the familiar and well-settled principles
declared in such cases as *Fresno etc. Co.* v. *Southern Pacific
Co.,* 135 Cal. 202, [67 Pac. 773]; *Southern California R. R.*
v. *Slauson,* 138 Cal. 342, [94 Am. St. Rep. 58, 71 Pac. 352];
*Katz* v. *Walkinshaw,* 141 Cal. 116, [99 Am. St. Rep. 35, 64
L. R. A. 236, 70 Pac. 663, 74 Pac. 766]; *Crescent Canal Co.* v.
*Montgomery,* 143 Cal. 248, [65 L. R. A. 940, 76 Pac. 1032];
*Montecito Co.* v. *Santa Barbara,* 144 Cal. 578, [77 Pac. 1113];
*Newport* v. *Temescal Water Co.,* 149 Cal. 531, [6 L. R. A.
(N. S.) 1098, 87 Pac. 372]; *Miller & Lux* v. *Madero C. & I.
Co.,* 155 Cal. 59, [22 L. R. A. (N. S.) 391, 99 Pac. 502];
*Barton* v. *Riverside Water Co.,* 155 Cal. 509, [23 L. R. A.
(N. S.) 331, 101 Pac. 790].

"It is well settled that the defense of laches need not be

pleaded but that when it appears from the evidence that the seeker of relief in equity has been guilty of laches the court will deny such relief *sua sponte* without any pleading. (*Harris* v. *Hillegas,* 66 Cal. 79, [4 Pac. 987]; *Bell* v. *Hudson,* 73 Cal. 289, [2 Am. St. Rep. 791, 14 Pac. 791]; *Sullivan* v. *Portland etc. R. R. Co.,* 94 U. S. 811, [24 L. Ed. 326]; *Hagerman* v. *Bates,* 24 Colo. 80, [49 Pac. 139]; *Coon* v. *Seymour,* 71 Wis. 346, [37 N. W. 243].) Therefore, the refusal of the court to permit the amendment charging laches amounted to a declaration and finding to the effect that the plaintiff was not guilty of laches and the question before this court then is whether the evidence sustains the court's ruling in this regard.

"Defendant's position is, that it established (as it did) an unquestionable prescriptive right to 760 cubic feet per second; that in addition to that 760 cubic feet it showed that it had been diverting for beneficial use some 350 additional cubic feet by means of its new dam and 'Outside' canal and that plaintiff with knowledge of the construction of its works and of their purpose and of the amount of water which would thus be diverted made no objection until after the use was actually begun, the 'Outside' canal beginning its diversion in 1898 and this action not being commenced until August, 1899. Under the peculiar facts of this case if knowledge of the construction of the dam and of the 'Outside' canal could be charged to plaintiff there was nothing in this information to charge him with the further knowledge that there was to be any additional taking of water. Thus, it is shown that the 'Outside' canal did not take water directly from the river, but took it from the main canal some three miles from the point where the latter drew from the stream. Moreover, it is shown that there were many laterals, some owned by defendant, some by private persons or corporations which drew from the main canal, and there was nothing, therefore, in the construction of this new lateral to impute knowledge to plaintiff that his rights were to be subjected to trespass. Knowledge of the construction of the dam, in like manner, did not charge him with knowledge that any more water than formerly was to be drawn from the river. Besides this, it appears that plaintiff hearing a rumor concerning an increased diversion wrote immediately to defendant's president in relation to this rumor and received the following letter in reply:

" 'J. J. STEVINSON, Esq.

" 'Dear Sir: Yours at hand and contents noted regarding as
to putting in a dam in the river. It shall not be done without
I can convince you and the neighbors that it will not deprive
you nor them of the quantity of water which would otherwise
flow in the channel. Either myself or some one who repre-
sents me will see you regarding the above.

" 'Very respectfully,

" 'HENRY MILLER.'

"Here was not only a distinct declaration from the president
of the defendant that plaintiff's rights were not to be invaded,
but Mr. Miller himself testified: 'When there is a surplus to
give us the water we are entitled to for the canal purposes and
then what water we are entitled to as riparian owners, and
when nobody is injured by not having water for domestic
purposes and for irrigation, we take out water enough to the
new canal ("Outside" canal), to a certain extent, for stock
water, but not for irrigation; sometimes we run a small amount
of water down for stock water.' But in addition to this there
is no evidence that plaintiff knew of the existence of the
'Outside' canal before its completion. It was 47 miles from
his residence; he was never nearer than 3 miles to it upon one
occasion when he visited the site of the new weir. This was
not built until November, 1898, which was after the irrigating
season of that year. There was in all ordinary years an
abundance of water until August. There was thus not only
an absence of actual or imputed knowledge on the part of
plaintiff, but there was the assurance of defendant's president
that no increased diversion of water was contemplated. The
only notice that plaintiff could possibly have, therefore, was
by observing the fall of the river as it passed his own lands
50 miles below. When the river was running high in May and
June such an increased diversion would not be noticeable;
but as the water began to fall in July and August it would be
observable. In August it would become apparent and it was
upon the 12th of August that plaintiff commenced his action.
Even when he noticed, or was chargeable with notice of the
diminution of the ordinary supply, there is yet to be con-
sidered the fact that the flow of the stream naturally varies,
not only from month to month and season to season, but also
from year to year, so that in a given month of one year there

may be much more water in the stream than in the same month of a succeeding or preceding year owing to the time, nature and extent of the rainfalls, the quantity of snow in the mountains and the weather conditions there which may retain the snow, permitting it to melt slowly or may cause it to melt rapidly with a consequent sudden and high run-off. Moreover, it is disclosed that in the fifty miles between plaintiff's land and defendant's canal there were others drawing from the stream, and it was for the plaintiff to determine by investigation to which of these the shortage was attributable before he could commence his action. Plaintiff's testimony in this regard is: 'I received an ample supply of water up to the time when the new weir was built in 1898. I knew the intention of the San Joaquin and Kings River Canal and Irrigation Company because they took the water away from me. That was just before I commenced the suit.' And, finally, it should be added that the action was tried upon no such theory as that embraced in the proposed amendments. Defendant had stated by letter that it did not intend to make an increased diversion. At the trial it produced witnesses to prove that no such increased diversion had been made and asserted repeatedly that there was no evidence of such increased diversion and contended for a prescriptive right alone. The case thus presented is similar in its facts to *Miller & Lux* v. *Madera Canal Co.,* 155 Cal. 59, [22 L. R. A. (N. S.) 391, 99 Pac. 502], where, as here, it must be held that the facts do not call for the invocation of the principles and rules announced in such cases as *Fresno Co.* v. *Southern Pacific Co.,* 135 Cal. 202, [67 Pac. 773], and the other cases above cited.

"Such part of the judgment as is appealed from is therefore affirmed."

**Rehearing** denied.